(Superior Court of Cincinnati.)

M. F. GALVIN, receiver of the Main Street Building & Loan Company v. B. ALBERS et al.

---

The condition of insolvency of a building and loan association is incompatible with the right of any member to withdraw his contribution to the general fund, until the proper proportion of the losses has been ascertained and adjusted.

---

JACKSON, J.

The question here presented arises upon demurrer to plaintiff's petition. The plaintiff, as receiver of the Main Street Building & Loan Company, prays that the numerous defendants herein shall "be declared to be members and shareholders of said company for the purpose of contributing their proper proportion of the losses thereof; that an account be taken between them and the said company and that the mutual rights and obligations be determined, and that upon full hearing thereof they be required to contribute their just, proper and equitable proportion of all losses sustained by said company previous to the receipt by them of their money and withdrawal from said company."

The grounds upon which this prayer is predicated are, as stated in the petition, substantially as follows: That said defendants are borrowing members of said association, and that at the time they withdrew therefrom and had their mortgages canceled they were, by action of the board of directors, subject to an assessment of seven (7) per cent. to meet losses that had been previously sustained; that said association was at that time hopelessly insolvent, and that an assessment of seven (7) per cent. was far from sufficient to meet the actual

losses sustained, and that in thus withdrawing with a seven (7) per cent. assessment the defendants escaped their proper proportion of the losses of the company, which losses occurred while they were members; that an assessment of about twenty (20) per cent. upon all of the members at that time would have been required to meet all losses.

The petition also alleges incompetence and misconduct on the part of the directors; and further, that they were actuated by bad faith in making such a small assessment so as to let themselves, and their friends and relations, escape without payment of their just share of losses. While the petition charges fraud and bad faith on the part of the directors, it does not expressly make such charges against the withdrawing members. It does not appear but that the latter acted innocently in withdrawing by paying the seven (7) per cent. assessment.

The single question therefore presented is, can certain members of a building association withdraw under such circumstances without paying their proper proportion of the losses, leaving the more unfortunate members who have not withdrawn before the receiver is appointed to pay more than their proper share of such losses?

In support of their contention in this regard defendants rely upon the case of Wangerin v. Aspell, 47 Ohio St., 250, which holds that "a building and loan association has power to compromise with a member and release him from further obligation to the corporation, whether the indebtedness arose from a loan or on a subscription for stock. And where the parties to the compromise have acted in good faith, the transaction will not be rescinded because the released member was paid a greater sum of money than he would have received upon a pro rata distribution of the assets of the concern."

But in that case it appears that the compromise was made with the withdrawing members four (4) years before the action was commenced; and that at the time of the withdrawal the

company was not insolvent. For it is said by the court on page 258: "It does not appear that the rates (of withdrawal), in the apparent condition of the association at the time, were unduly favorable to those who wished to retire." And again on page 259 it is said: "The fact that some years later, either through the mismanagement of those who remained in and participated in conducting its business, or for some other cause it turned out that the association retired these shares at too high a rate, does not affect the question."

The case at bar presents quite a different question, viz., of hopeless insolvency at the time of withdrawal and of a grossly inadequate assessment fixed at that time. We find no case in the supreme court of this state directly on the question. But we find numerous decisions of other courts of high repute maintaining the doctrine contended for by the plaintiff. The case of Chapman v. Young, 65 Ill. Ap., 131, is particularly instructive on this point. It is there said: "The right of withdrawal, which is a peculiar feature of such institutions, is not conferred upon the member for the purpose of enabling him to escape his just proportion of responsibility for losses incurred by an insolvent association." And again: "For the condition of insolvency is incompatible with the right of any member to withdraw his contribution to the general fund, until the proper proportion of the losses has been ascertained and adjusted."

The same doctrine is announced in re Sunderland, 24 Q. B., 394; Gibson v. Association, 170 Ill., 46; also English on Building Associations, page 91, sec. 108.

We therefore hold that the condition of insolvency existing at the time of defendants' withdrawals, and the grossly inadequate assessment paid by them, did not relieve them from all further liability; and that they may be declared members and ordered to pay their just and proper share of the losses existing at the time of said withdrawals.

The demurrer must be overruled.

M. F. Galvin, for Plaintiff.

C. L. Dengler and Charles Phares, for Defendants.